Lisa GAYLE, Plaintiff–Appellant,

v.

UNITED PARCEL SERVICE, Incorporated; Flexible Benefits Plan–United Parcel Service Long Term Disability Plan, Defendants–Appellees.

No. 04–1476.

United States Court of Appeals, Fourth Circuit.

Argued: Dec. 3, 2004.

Decided: March 9, 2005.

---

**ARGUED:** Robert Edward Hoskins, Foster Law Firm, L.L.P., Greenville, South Carolina, for Appellant. Patrick Connors DiCarlo, Alston & Bird, Atlanta, Georgia, for Appellees. **ON BRIEF:** D. Michael Kelly, Suggs & Kelly, Columbia, South Carolina, for Appellant. Peter M. Varney, Alston & Bird, L.L.P., Atlanta, Georgia; David W. Overstreet, Carlock, Copeland, Semler & Stair, L.L.P., Charleston, South Carolina, for Appellees.

Before WIDENER and WILKINSON, Circuit Judges, and Norman K. MOON, United States District Judge for the Western District of Virginia, sitting by designation.

Affirmed by published opinion. Judge WILKINSON wrote the opinion, in which Judge WIDENER and Judge MOON joined.

## OPINION

WILKINSON, Circuit Judge:

Lisa Gayle retained a law firm to represent her as she sought to preserve her disability benefits. For nearly seven months, the firm did nothing to press her claim. By the time it rediscovered her case, Gayle's opportunity to appeal the denial of her disability benefits claim had expired. Under the terms of her ERISA-governed employee welfare benefit plan, Gayle could not pursue her claim in federal court until she had exhausted the internal appeals process. But the plan declined to consider her appeal since it was almost two months late. In this case, we consider whether attorney negligence justifies equitable tolling sufficient to excuse the lack of compliance with the plan's appeal procedure. We conclude that it does not.

### I.

Lisa Gayle had been employed by United Parcel Service ("UPS") for twenty-three years before she suffered health problems serious enough to require her to stop working in March 2001. She was a participant in the Flexible Benefits Plan ("Plan"), which is fully-funded by UPS and is an employee welfare benefit plan governed by ERISA, 29 U.S.C. § 1001 et seq. (2000). The Plan is administered by the UPS Claims Review Committee ("Committee"). Claims are processed by a third-party claims administrator.

Gayle received short-term disability benefits for six months, and long-term disability benefits from September 2001 until January 2003. At that point, she received a letter informing her that a review of her

medical documentation showed she was no longer eligible for disability benefits.

In bold print, the letter also stated that "[i]f you disagree with this determination, you must submit an appeal within one hundred eighty (180) days from your receipt of this letter." This internal appeal requirement was consistent with the appeal process described in the Summary Plan Description ("SPD"). ERISA and federal regulations also mandate that each welfare benefit plan include such internal review. *See* 29 U.S.C. § 1133 (2000) (employee benefit plans shall "afford a reasonable opportunity ... for a full and fair review" of a denial of benefits); 29 C.F.R. § 2560.503–1 (2004).

The SPD states that upon the denial of benefits, plan participants may file a "first level appeal" with claims administrators within 180 days of receiving the denial. If this appeal is unsuccessful, a "second level appeal" is available. It should be filed with the Committee within 60 days of receiving the denial of the first level appeal. The SPD notes that "[e]ach level of appeal will be independent from the previous level (i.e., the same person(s) ... involved in a prior level of appeal will not be involved in the appeal)" and that "[o]n each level of appeal, the claims reviewer will review relevant information that you submit even if it is new information." Particularly important for this case, the SPD also states: "You cannot file suit in federal court until you have exhausted these appeals procedures."

Gayle's denial letter arrived on January 21, 2003. Six weeks later, on March 6, 2003, she retained the Columbia, South Carolina, law firm of Suggs & Kelly to assist her in navigating the appeal process. Ordinary practice at Suggs & Kelly is to take in an ERISA case like Gayle's, and then send it to an attorney at the Foster Law Firm in Greenville, South Carolina.

Suggs & Kelly either mistakenly "thought [it] had appealed" Gayle's case (the reason suggested to the Plan) or, "through an administrative oversight, ... thought that the file had been sent to [the Foster Law Firm] when, in reality, it had not" (the reason provided on appeal). Whatever the reason, the attorney handling the appeal pending before us—who we emphasize was in no way responsible for the mistake—acknowledges that Gayle's case simply "fell through the cracks."

The claims administrator—and ultimately the Committee itself—declined to make an exception to their rules for Gayle. Instead, they adhered to their interpretation of the Plan's timeliness requirements, and refused consideration of her internal appeal when she sought review on September 18, 2003. They pointed out that Gayle's request for an appeal was due no later than July 19, 2003. Gayle then brought suit in the District of South Carolina under ERISA, 29 U.S.C. § 1132(a)(1)(B) (2000). She asked the court to remand the claim to the Plan, requiring it to consider the merits of her appeal. The district court dismissed the motion to remand with prejudice and dismissed the underlying ERISA claim without prejudice.

We review grants of summary judgment de novo, *Bailey v. Blue Cross & Blue Shield,* 67 F.3d 53, 56 (4th Cir.1995). For the reasons that follow, we affirm the judgment.

## II.

## A.

■■■ Gayle distinguishes between the two levels of appeal provided under the Plan's terms. She acknowledges that her first level appeal was untimely, but argues that the court can remand her claim to the Plan under the doctrine of equitable toll-

ing. She believes that tolling should be available in ERISA claims, and that her attorney's negligence (and her own innocence) justifies tolling here.

 An ERISA welfare benefit plan participant must both pursue and exhaust plan remedies before gaining access to the federal courts. *Makar v. Health Care Corp.*, 872 F.2d 80, 82 (4th Cir.1989) (exhaustion of plan's remedies is "a prerequisite to an ERISA action for denial of benefits"). The federal regulation governing such appeal procedures authorize limited periods for claimants to file requests for review of denied claims. *See* 29 C.F.R. § 2560.503–1(h) (2004). Courts enforce these limits because

> [h]aphazard waiver of time limits would increase the probability of inconsistent results where one claimant is held to the limitation, and another is not. Similarly, permitting appeals well after the time for them has passed can only increase the cost and time of the settlement process.

*Terry v. Bayer Corp.*, 145 F.3d 28, 40 (1st Cir.1998). In short, internal appeal limitations periods in ERISA plans are to be followed just as ordinary statutes of limitations. Likewise, "[f]ailure to file a request for review within [a plan's] limitations period is one means by which a claimant may fail to exhaust her administrative remedies." *Gallegos v. Mt. Sinai Med. Ctr.*, 210 F.3d 803, 808 (7th Cir.2000). Gayle therefore acknowledges that the exhaustion rule applies to her, at least with respect to her first level appeal.

 If available, however, equitable tolling would restore a claimant's right to review even though she otherwise would be time-barred. But "[f]ederal courts have typically extended equitable relief only sparingly." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). The rarity of our resort to equity does not spring from miserliness. Rather, equitable tolling "must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir.2000).

Equitable tolling, while rare, does allow for exceptions to the strict enforcement of deadlines. Such exceptions are narrow, and none is available here. Equitable tolling has been permitted "where the claimant has actively pursued his judicial remedies by filing a defective pleading during" the limitations period. *Irwin*, 498 U.S. at 96, 111 S.Ct. 453. In this case, however, Gayle made no appeal to the Plan, defective or otherwise, within the authorized period. Equitable tolling has also been appropriate "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Id.* But the Plan sent Gayle a detailed denial letter. She does not dispute receiving it, or that—far from tricking her into inaction—it was anything short of clear on the simple procedures she should follow should she disagree with the denial of benefits.

Gayle therefore fits none of the established justifications for equitable tolling. She instead argues that equitable tolling is warranted here because she was innocent and had acted to protect her rights by retaining an attorney. The attorney's negligence alone caused her appeal to become untimely. Gayle's argument boils down to a request that we relieve her of her counsel's negligent failure to observe required procedure. However, the Supreme Court and our own case law have already rejected such a distinction between the conduct of attorneys and their clients. Indeed, the Supreme Court has held that there is

> no merit to the contention that dismissal of petitioner's claim because of his coun-

sel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent....

*Link v. Wabash R.R. Co.,* 370 U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). *See also In re Walters,* 868 F.2d 665, 668–69 (4th Cir.1989) (applying *Link* ).

In *Irwin,* which applied *Link,* the Supreme Court withheld equitable tolling where the attorney's omission was less severe than here. Just as Gayle brought her denial letter to her attorney, Irwin forwarded his right-to-sue letter from the EEOC to his attorney. But Irwin's attorney was out of the country. The suit had to be filed within 30 days of receipt of the letter. The attorney filed suit 29 days after personally receiving it, but 44 days after it was received at his office. *Irwin,* 498 U.S. at 91, 111 S.Ct. 453. The Court observed that Irwin "appeared by his attorney in the EEOC proceeding." *Id.* at 92, 111 S.Ct. 453. In this context, the Court found equitable tolling to be inappropriate.

■ In short, the Supreme Court has foreclosed Gayle's argument by emphasizing that "the principles of equitable tolling ... do not extend to what is at best a garden variety claim of excusable neglect." *Id.* at 96, 111 S.Ct. 453. Nor is our rejection of Gayle's argument altered by accepting, as we certainly do, Gayle's insistence that her attorney's mistake was innocent. The law has always, and necessarily, held people responsible for innocent mistakes. The tort system, for example, is premised on penalizing innocent yet negligent mis-

takes. Many attorney mistakes are innocent in that they involve oversights or miscalculations attributable in some part to the sheer press of business. To accept such mistakes as a ground for equitable tolling, however, would over time consign filing deadlines and limitations periods to advisory status. The ensuing confusion would contradict our prior observation that equitable tolling requires an "extraordinary circumstance beyond [the plaintiff's] control that prevented him from complying with the statutory time limit." *Harris,* 209 F.3d at 330.

We concluded in *Harris* that, even though the attorney's mistake in construing a statute of limitations provision "appears to have been innocent," *id.* at 330, it nonetheless was not an "extraordinary circumstance" justifying equitable tolling. We think that attorney negligence—including allowing a client's case to fall through the cracks—is even less an extraordinary circumstance. Equity will not disadvantage one party, who is entitled to rely on the mandated appeals procedures, in order to mitigate the negligence of the other party's freely-chosen attorney. *See, e.g., Link,* 370 U.S. at 634 n. 10, 82 S.Ct. 1386 ("[K]eeping this suit alive merely because plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of plaintiff's lawyer upon the *defendant.*") (emphasis in original). While the defendant thus remains free to reconsider a claim forfeited through attorney error, no court may compel it to do so. We therefore hold that attorney negligence does not justify equitable tolling.

### B.

■ Because equitable tolling is inappropriate and will not restore her first level appeal, we must address Gayle's argument that her second level appeal was timely. The SPD requires the

first level appeal within 180 days of receipt of the denial letter, and Gayle does not dispute she missed that deadline. But Gayle argues that the second level appeal deadline—sixty days after an adverse determination—had not passed before her attorney contacted the Committee.[1] Thus, even though tolling is unavailable, Gayle argues that because she was not late for the second level appeal, the court should remand her claim to the Plan for an ab initio merits consideration at this level. She therefore asks that the underlying claim of entitlement to long term disability benefits under 29 U.S.C. § 1132(a)(1)(B) be dismissed without prejudice.

We cannot accept Gayle's invitation to read the Plan's two-tier appeals process to excuse her from complying with the deadline for first-tier review. The SPD clearly identifies *one* deadline that Gayle had to meet in order to pursue *any* appeal—180 days after the initial denial of benefits. The first appeal is the sine qua non of the second appeal, which cannot stand alone. Otherwise, Plan participants could simply allow the 180–day deadline to elapse before contesting their denial of benefits. Such procrastination would not only prejudice more punctilious participants, but might well eviscerate the 180–day deadline entirely. Plan participants cannot, in other words, leapfrog at will over inconvenient steps in a unitary appeal process.

█ The statutory requirement that plans have a review process, *see* 29 U.S.C. § 1133, along with the well-established principle that plans can craft their governing principles as they think best, *see Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995), further persuades us that Gayle's

argument lacks merit. Plan sponsors, not federal courts, are empowered by ERISA "to adopt, modify, or terminate welfare plans." *Id.* Recognizing this, Gayle presses the language of the SPD itself to argue that it permits stand-alone second appeals. The SPD states that "[e]ach level of appeal will be independent from the previous level (i.e., the same person(s) . . . involved in a prior level of appeal will not be involved in the appeal)." It also promises that "[o]n each level of appeal, the claims reviewer will review relevant information that you submit even if it is new information." Taken together, Gayle asserts that this language means that the two levels of appeal are sealed off from each other, and that their "independence" precludes any consequences of missing an initial deadline upon subsequent appealability.

But this view misapprehends the import and the clarity of the SPD. While it permits new evidence at each level of appeal, this permissive rule simply advances "the strong federal policy encouraging private resolution of ERISA-related disputes." *Powell v. A.T. & T Comms., Inc.*, 938 F.2d 823, 825 (7th Cir.1991). *Accord Makar*, 872 F.2d at 82–83. It makes such informal resolution possible for many Plan participants—who may not wish to hire counsel for an internal appeal—by allowing them to improve their arguments unconstrained by unforgiving rules of evidence and waiver. The "independence" Gayle repeatedly invokes does not mean that the appeal process is disjointed or is not unitary. It simply gives claimants assurance that individuals deciding the first level appeal will not also be decision makers for the second level appeal. This is hardly revolutionary; it mirrors the commonplace that lower

---

1. We shall assume arguendo that the sixty-day limit had not passed, in spite of our conclusion that Gayle had waived the first level appeal through untimeliness.

court judges will not hear appeals of their own rulings.

The SPD's description of its internal review procedures also reflects the familiar principle that the chronological order of a case's appellate progress is significant. It specifically labels its appeals to run consecutively, as "first" and "second." It dates the availability of the latter from the resolution of the former. Rules of procedure in federal court provide an apt analogy. A dissatisfied litigant who misses a deadline to file in the court of appeals cannot then blithely skip to the Supreme Court and argue that the time limit for *that* subsequent appeal has not passed. Similarly, a restaurant offering "free refills" is entitled to assume that only an initial beverage purchase can trigger the demand for a refill. A "second," by its nature, must be preceded by a "first."

The Plan's appeal process—like any appeal process—is structured such that the Committee, which hears second level appeals, would receive the benefit of earlier review. *See, e.g., Gallegos,* 210 F.3d at 809 (the exhaustion "requirement is aimed at encouraging claimants to pursue private remedies and develop a proper administrative record"); *Makar,* 872 F.2d at 83 (noting that one "value of ERISA's internal claims procedures" is guaranteeing a "factual record to assist" in review or appeals). The second level appeal is certainly independent, but it is not intended to be blind. In the same way, de novo review by this court is "independent" of the district court, but it relies upon and derives benefit from that earlier level of review. This is equally true of the Plan's system of appeals, which is carefully crafted to prevent the Committee from having to hit the case cold.

Gayle regards the time periods in the Plan as hostile, but they need not be so. They encourage a reasonably prompt and informal resolution of claims which ulti-mately works to the benefit of the Plan's participants. This is consistent with ERISA's purpose as "a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Largely for this purpose, we have required exhaustion of internal remedies before coming to court, since availing oneself of such dispute resolution procedures means that "subsequent court action may be unnecessary in many cases because the plan's own procedures will resolve many claims." *Makar,* 872 F.2d at 83.

This advantage would appear to wane once the opportunity for internal appeals has disappeared through missed deadlines. But ERISA's requirement that plans provide internal remedies also "lead[s] courts to see that those remedies are regularly utilized." *Id.* Only through insisting on adherence to plan remedies do we vindicate "Congress's apparent intent in mandating internal claims procedures ... [which] was to minimize the number of frivolous lawsuits; promote consistent treatment of claims; provide a non-adversarial dispute resolution process; and decrease the cost and time of claims settlement." *Powell,* 938 F.2d at 826. We respect ERISA's values by avoiding these "inconsistent results where one claimant is held to the limitation, and another is not," along with the attendant costs of such uncertainty to the settlement process. *Terry,* 145 F.3d at 40. Accordingly, we decline to adopt a rule which would fail to penalize disregard for a plan's internal dispute resolution procedures.

### C.

We therefore affirm the district court's dismissal with prejudice of plain-

tiff's first cause of action for remand to the Plan. This must follow from the legal conclusion that Gayle has neglected to exhaust her Plan remedies, and for lack of timeliness, cannot now do so.

We did not dismiss with prejudice in *Makar*. There, like here, the claimants resorted to federal court without availing themselves of the plan process first. Unlike here, however, the claimants in *Makar* did so without a prior conclusion that the deadline for a Plan appeal had run. Therefore, in *Makar*, we directed that the underlying ERISA claim be dismissed without prejudice "to allow the Makars the opportunity to pursue their remedies under" the terms of their plan. *Makar*, 872 F.2d at 83. Similarly, in *Hickey v. Digital Equipment Corp.*, 43 F.3d 941, 945 (4th Cir.1995), we found that the proper consequence of failing to exhaust was a remand to the plan, and dismissal without prejudice to allow that.

But here, unlike in *Makar* or *Hickey*, it is clear that "the opportunity to pursue [Gayle's] remedies under" the Plan's appeal process has expired. The Plan was entitled to respect its appeals process which it had announced plainly in advance, which it had applied consistently, and which served the interests of claimants in a prompt resolution of their claims. Dismissal without prejudice is appropriate whenever a claim can still be brought. But since the pursuit and exhaustion of internal Plan remedies is an essential prerequisite to judicial review of an ERISA claim for denial of benefits, *Norris v. Citibank, N.A. Disability Plan*, 308 F.3d 880, 884 (8th Cir.2002); *Makar*, 872 F.2d at 82, and since this is impossible here, Gayle's claims are barred. In such situations dismissal with prejudice is required. Any

remaining dispute must be resolved between the plaintiff and her lawyers. *See Link*, 370 U.S. at 634 n. 10, 82 S.Ct. 1386.[2]

### III.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*

---

**2.** As to the second cause of action for judicial review of subsequent denial of benefits, inasmuch as there can be no case or controversy with respect to subsequent actions of any sort, the dismissal by the district court of that claim was appropriate.